Morning. May it please the court. My name is David Marshall. I represent the Appellant Braille Precision Manufacturing Corporation and I respectfully request five minutes for rebuttal. Two issues for the court to determine today with respect to this appeal. First, it's jurisdictional. May the parties contract away the right to appellate court review of the Section 10A factors which Paul Street v. Metell have described as addressing the egregious departures from the agreed upon arbitration that can take place. And we suggest that one may not waive that right. Second, did the arbitrators in this case Even by a contract between represented parties that are arm's length, these are two sophisticated bargaining entities. You're saying even in that context, you can't waive the right? Correct. Absolutely. And what's your best case for that? Best case is Heft. The Second Circuit decision that specifically dealt with this set of facts is not as directly on point as the McTech case, which I'm sure we'll talk about too, but in Heft. It really hurts you, doesn't it? Pardon me? Doesn't McTech really go the other way? Correct. McTech is the opposite of Heft. And McTech's more on point? I think McTech is more on point only because of the language that specifically addresses the issue. Heft actually decides the same issue, just in the opposite direction. And of course, in Heft, the language was as broad as you can probably have in connection with an alleged waiver. It purported to waive any type of review on any appeal whatsoever. Well, final, binding, and non-appealable must mean something. It does, Your Honor. And I think that the Rollins and Team Scandia cases are instructive on that. And what they say is the language really taken in the normal colloquial sense means that parties are waiving the right to appeal the merits of the decision. But those is the backbone of the integrity of the arbitration process. In other words, it seems to me that this agreement and the way it was contemplated, and if you look at that in contact with Section 9 and Section 10, it really does project kind of the prototype of what arbitration should be and how it should work. You've got two parties coming together. They want to resolve their disputes by arbitration, specifically in a place governed by Pennsylvania law. They recognize that there may be a situation in which the arbitrator's award is outside of the scope of the grant or the submission, so they allow for judicial review in terms of district court review, but then say, look, we don't want this thing to plod on forever. We're buying some kind of finite resolution of any kind of dispute vis-a-vis the arbitration process, one. Also in terms of the court process, so that you can review the submission of the grant. What happened there, and we're agreeing just in terms of cost and planning and everything else to preclude a way for the rights we would otherwise have under 9 and 10 to go to an appellate court. That seems to me like a very reasonable resolution of two business entities coming together to draft a contract. Why shouldn't we look at this this way? The district court has a shot at whether or not the arbitrators went beyond what they were asked to do, and that's it. First and foremost, of course, there is no absolute right for the parties to contract, and that's what Hall v. Mattel makes very clear. In that case, obviously, there was an attempt to expand review beyond 10A, and the Supreme Court said, no, you can't do that. Then the question becomes, well, if you can't expand, why is it that you can contract? The only authority that there is for that is the MACTEC decision, and the MACTEC decision is policy-based, as the court just indicated, and all MACTEC said was this. Well, if we can't expand, what is the rationale for contracting? It is that the FAA and arbitration is intended to expedite the process, and so MACTEC says, I think, in essence, anything that is intended to expedite the process would be acceptable within, I guess, reasonable bounds. The problem with that is we look to heft. What you're really assuming when you say that, Your Honor, is that most arbitrations are going to be confirmed, which, of course, is true, and Judge Joyner pointed out very clearly in his decision the cases that say that there is this disposition of the courts to confirm arbitration awards. And so the notion is that there's this safety net, as Hall says, under 10A that protects against certain misconduct or arbitrators acting beyond the bounds. And so when MACTEC says, well, it's to expedite the proceeding, that's only assuming that all of these awards are going to be confirmed. In heft, of course, there was the opposite. In heft, the district court vacated the award, and even though there was that waiver language, the Second Circuit said, no, wait a minute. Parties seeking to enforce arbitration awards through Federal Court confirmation judgments may not divest the courts of their statutory and common law authority to review both the substance of the award and the arbitral process for compliance with Section 10A. Therefore, we have the right to examine what the district court did. And, of course, in that case, the Second Circuit found that the district court was in error when it vacated the award and reversed the judgment. Now, one would argue in that case that that was the expeditious action, and that's the expeditious thing to do, because if that award were to stand, if that, excuse me, that district court judgment were to stand, then the parties presumably would have had to go on through a completely new arbitration process or some other judicial process. So once again, I think there's a fallacy in that MACTEC decision with that original policy notion that it automatically is going to expedite proceedings to suggest that without appellate review, things will go more smoothly. Maybe this case was an exhibit, too, in showing that that's Mrody's assumption. But in a general scope, looking at the universe of commercial transactions, it would be true, I mean, there's no empirical evidence that I'm aware of, maybe it's out there, that if parties enter into an agreement, and in that agreement they restrict their right to go into the courts, that would, in the general courts, wouldn't it reduce costs and lead to more commercial certainty by capping the extent to which any dispute can drag on, drag on, and give rise to legal loss? I think that's true, except I would also suggest that once you decide you're going to step into the federal court system, once you want to take advantage of the opportunity to have the federal court look at the case, then you take it with the process, and of course, under Rule 16, the right to appeal, once again, on those narrow issues in 10A. So you take it as a whole. But where is it, though, where's the doctrine of law, the legal principle that says two parties can't, between themselves, decide not to take it as a whole, to not do that? I mean, not in criminal cases. Somebody could be convicted of murder, be sentenced to life imprisonment. Death would be an exception to that, but life imprisonment, they can contract away the right to appeal with very, very few exceptions. They can give up the right to take an appeal to the sentence. Why can't commercial parties have the same kind of contracting right? And that goes to another one of the rationale that MACTEC uses, and that is that there were some examples where other parties may do exactly what the court has suggested. And MACTEC examined Hoeffel in the course of its decision. Right, and it looks at Wright and Miller. Those cases, though, as we analyze them, including the example the court just used, are cases in which the issue comes up and then there's a knowing waiver. What we're talking about here is a prospective waiver. No, I understand that. I just don't understand why it's any different. Why it's different between an issue when the issue pops up and you waive it, or before the issue pops up, you waive it. It seems to me there's nothing in the law of contract or under the FAA that would parties to the agreement deem it's in their commercial interest to do that. It's different based on the policy. And it's similar to the notion that in many jurisdictions, one may not waive a statute of limitations defense before the issue comes up. Or one may not waive prospectively fraud by the other party in a contract. Why not put that in the contract? Why not draft the contract that way to limit the scope of the waiver clause, which is otherwise pretty broad, and just put it into, what is it, 7.1, I guess, or 9.1, your arbitration clause here? Right. Write in language which would do exactly what you're suggesting should be the procedure, 7.5, I guess it is, 9.1, I'm sorry, 9.1, and 9.4. Just write in a clause that says to the extent that the parties have contemplated arbitration that are not to be interpreted to limit us to take an appeal to any right of lawsuit we'd otherwise have to pursue an issue of that and then just fill in the language which gets you where you want to go. You could, except I'd suggest that perhaps the opposite is true, that if the parties, and this is the second issue of this jurisdictional prong, even if the waiver were allowed, is this a waiver that is obvious and knowing, is the language appropriate? And Rollins and Team Scandia say this kind of language is not, for the reason I suggested earlier, that most interpret that to be simply the waiver of a right to appeal on the merits of the case. But in answer to your question, I'd say the opposite perhaps is more effective, and that would be that if the parties are going to be allowed to waive, that they should waive it in an obvious and knowing fashion by perhaps saying they waive the rights to appeal, including, but not limited to, the rights under 10A of the FAA and corresponding federal statutes. So I'd suggest that there's, I don't think there's a clear answer as to, there is no law, in other words, if that's what the court is asking, as to why one or the other is appropriate under these circumstances.  Once again, MACTEC, which is the only circuit court case that addresses this issue, is purely policy based. And the only other case that they cite, the Van Dusen case from New Jersey, is based almost entirely on the MACTEC reasoning, and in addition, the New Jersey statutory scheme is different. In fact, in New Jersey, one can actually expand the section 10A factors for review. So it's completely different than the structure under the FAA. So that's not helpful. But the only thing we do have is that MACTEC decision. And once again, it is policy based, so there is no specific answer to the court's question. I would suggest that the policy considerations support the position that it's not waivable, for the reasons I suggested earlier, because of the importance of appeal in that process, the importance of 10A. If you're right, then what does that do to the value of the arbitration clause? Doesn't that really undermine the whole purpose of the arbitration clause and what the parties thought they were buying in the antecedent to arbitration? I don't think so, because I think the parties thought they were buying an arbitration with no appeal on the merits. That's what the parties thought they were buying. The parties were not contemplating, nor could I think one reasonably infer that, in particular based on this case law of Rollins and Team Scandia, that someone was actually waiving their 10A rights. I see my time is up. Okay, thank you. You did deserve time, I think, didn't you, Marshall? Thank you very much. Mr. McConnell? Can we transcribe the oral argument behind the case transcription? Yeah, we can. Yeah, yeah. Before I forget, could you, Marina, get a transcription? We would like a transcription of the oral argument in the preceding case. Jim Yinsky. Thank you. I assume the government will have to probably pay for that. In a criminal case, we don't usually. But, I see he's not present here. I've forgotten how that works. You should ask him. I'm sorry. Well, we'll discuss that. I'm not sure how to resolve that, because I'm not sure if he has retained counsel or not. I'm sorry, sir. May it please the court. I'm James McConnell. I represent Southco. First, I would like to beg the court's indulgence from my voice. No problem. It's springtime. And I'm overreacting. Okay. In any event. Today is springtime. Yesterday was not really springtime. Today we'll let you get away with that apology. Yesterday it had some problems. Fair enough. Are we bound by Tavis, by the Tavis decision in this circuit? That's interesting. The Tavis case, the jurisdictional issue, the arbitration part of it was decided by the panel, but there was no decision by the district court on the issue. So I must say the court's certainly bound by Tavis for what it says and what it rules. But I don't think it really is relevant here. You think that might be dictum, the part that says that we could review? You think that might be just dictum in that case? That they could review? That says we could review a final bonding and non-appeal of arbitration award. I just was curious what your take is. I think what they're dealing with there is the Pennsylvania law on that subject. But in fact, what they said was they couldn't review except for the procedural basis. Whether or not there was due process. Whether there was a hearing or there was a corrupt panel. That was the limit. When that's in the statute. It's not in the statute. Those things, of course, are covered by the statute. But what Tavis said was in that case where it was not appealable, they couldn't have anything more. But as that issue arose, I don't think it binds in this case. Although we would be happy to apply it if it did. Addressing first the question of what non-appealable means. It's argued that it means only that you give up review on the merits. But that's the FAA takes that away. There is no review on the merits of the arbitration. The review is defined by Article 10 of the statute. So when you say it's not appealable, if you don't take that away, you haven't taken anything away. Shouldn't there be some sort of judicial review as a safeguard? That's an argument that is relevant, certainly. But in this case, as MACTEC points out, that isn't what we're dealing with. Well, you had judicial review here. Excuse me? You did have judicial review. We had review. That's as the court, the Jersey court said in Van Duren. They had full review, as the court said in MACTEC. It was reviewed. And have to remember, in all of those cases, Rollins and all the others were dispensing any review. So that question really is not raised here. This is only a question of can you waive appeal. And what MACTEC concluded, the Tenth Circuit concluded in MACTEC was you can waive appeal in any case. And there's no reason why it should be different here. I think that's essentially it, and I think that's correct. But on the question of the purpose or the reason why MACTEC went the way it went, it was not just to expedite or make it easier. One of the principal bases for that decision was the right of the parties to determine what the role of the arbitration would be, as Your Honor was suggesting in the questions. In Hall v. Mattel, in which the Bowen case earlier by the Tenth Circuit was cited, in Hall v. Mattel, the Supreme Court confirmed the right of the parties to determine the scope and nature of the arbitration, but said that it can't expand the scope of review. And if you read the Hall v. Mattel decision, you'll see the court very carefully avoided saying a single word that could be interpreted as limiting the right to limit review. In fact, the keystone of Hall v. Mattel, now that it's been raised, really was that the statute must be followed. That's what Judge Souders said. You've got to follow the statute. Don't fight the statute. And in that case, the statute, as they pointed to Section 9, said the district court must confirm. And as the court said, that's a non-malleable term. The district court must confirm if it isn't vacated. But now if you look at the other side of that, what the court is pointing out is that if there isn't a motion to vacate, if it isn't filed on time, if it isn't filed and served within 90 days on the opposing party, if those things all don't occur, there won't be any review. So that if we come into court after 90 days are up and there's been no motion to vacate, we can go into court and ask the court to confirm it. And under Section 9, as the Supreme Court has affirmed, the district court must confirm it. And there's no review. So the statute really does set up a situation where there is no review unless certain conditions occur. And that, and the question then that's raised here is can the parties agree? So the arbitration is decided. Comes the time to file. The parties agree that they won't file to vacate. There's no policy against that agreement, as the court pointed out in MACTEC. And nobody's pointed to any case in which it's been done. In fact, there's no case that has actually decided this issue contrary to MACTEC. And MACTEC arose on the Bowen case, which we referred to in our brief, which had been before the Supreme Court in Hall v. Mattel. In Hall v. Mattel, the two sides of the issue were represented by a number of cases. One of them was Hufft in the Second Circuit, and that was overruled by the Supreme Court. And the other was the Bowen case in the Tenth Circuit. And it was in the Bowen case that this issue had arisen first. In that case, there was a waiver of any appeal. And Bowen said that all it said was final and binding. It didn't say non-appealable. The Tenth Circuit distinguished that in MACTEC because it said non-appealable. That's essentially the basis of the decision in MACTEC. The reference was made to the New Jersey statute. Just to make it clear, the statute that was referred to in New Jersey came after that case. That case was not decided under that statute. The court spelled that out specifically. It was decided under the previous statute, which is identical to the Federal Arbitration Act. And that case is very much directly in point. Now, no reference has been made to the second subject that has been brought up and brings us here, and that is the appeal, non-appealability. I would like to say to the court that the real ultimate argument in its reply brief at pages 4 and 5 demonstrates that there is no arguable basis, in fact, for their appeal. Now, the argument that's made here, that's under heading B, page 4. It starts out with the heading, the panel found it could award consequential damages only by deleting and rewriting material language. And over on page 5 at the bottom, it concludes, an award based on the deletion of material language in the agreement is not rationally derived from the agreement and cannot be said to draw its essence from the agreement. Now, that's the argument. What Real recognizes is that the only basis on which they can overturn the arbitration, or this court should overturn the arbitration, is on the ground that the award cannot be rationally derived from the agreement. And that's this argument. Between that heading on page 4 and the conclusion on page 5, there's not a single reference to the panel's decision. There's no support whatever for this argument. In fact, the only thing I cite to is our brief.  That argument is that the award does not derive its essence from the agreement and the panel therefore exceeded its powers because the panel did not basis decision on the express terms of the contract, specifically section 7.5, which is required by section 9.7 of the agreement and section 9.4. The reason that there's no citation to the arbitration award, to the decision, is that that argument is flatly contradicted by the award itself. Looking at the award in the appendix at 133 of the appendix is the section of the panel's decision that deals with this issue. Now, bear in mind, the contention that is made is that the panel didn't basis decision on the express terms of the contract, specifically 7.5. The heading of this section is South Coast claims are not barred by section 7.5 of the agreement. And what follows is the court's analysis of the contract, specifically including section 7.5. The heading would not necessarily define the substance, though. No, but down below at the bottom of the page, the court says it. It says a contract must be interpreted as a whole to give effect to all of its provisions. That's exactly what Rial is saying they're supposed to do. And to interpret those provisions so that they're consistent with each other. Now, Rial does not refer to that because that's exactly what the court did. It interpreted those provisions. And the court concludes Rial's interpretation would place Article 7, that's 7.5, in conflict with 9.7, which permits the panel to grant any relief except punitive damages. And concludes with no conflict arises if 7.5 is limited to indemnification claims, leaving 9.7 to cover all others. This gives effect to both sections. And that's precisely, and is basing this decision precisely on the expressed terms of the contract. And the court is following and applying Pennsylvania law. The case that's cited there, Ivey versus Franklin, addresses a point exactly that. And makes the further point that you cannot interpret a contract so that one provision annuls another. And that's what they would use with 9.7. They would have 9.7, a limitation of damages, annulling the power to award damages in 9.7. In fact, as they presented the issue to the arbitrators, their contention was that 7.5 eliminated all damages, not just consequential damages, all damages. And on that basis, it would completely nullify Section 9.7. And if you look at Section 9.7, it provides, it gives the power to award damages except punitive damages. So you have the general power, the plenary power, which 9.7 gives the arbitrators to grant all relief at lower inequity except punitive damages. If there were going to be, if the parties intended to further limit the power to award damages, they would have put it where they put the punitive damages limitation in 9.7, where the power was given. The limitation that's referred to here is in the section of the contract dealing with liability, with indemnification. And the Section 7.5 that provides the limitation of liability is limited to the agreement, the indemnification agreement. If you look at the beginning of 7.5, it accepts from the limitation certain parts of 7.1 and 7.2. 7.1 and 7.2 comprise the indemnification agreement. I don't think it could be clear from the inherent text of the agreement itself that 7.5 was intended to be limited to the indemnification agreement in limiting liability. And the court's application of Pennsylvania law in interpreting the contract was absolutely correct. The court also observed that if the parties had intended otherwise, they could have used the convention that the contract set up of capitalizing the A in agreement, which wasn't done. In fact, the whole word was capitalized. They still could have done it. They could have made it comply with that, but they didn't. Now, that isn't why they decided the case, but they point out that they had the parties could have done it differently, but they didn't. I submit, Your Honors, that in the first place, the court does not have jurisdiction of this appeal by virtue of the waiver in accordance with the MACTEC decision, which is totally in accord with Hall v. Mattel, and that in any event, the appeal should not have been filed. And there is no arguable basis for it, and it is frivolous. Thank you, Your Honors. Thank you, Mr. McKinnon. Mr. Marshall? Thank you, Your Honor. Three points addressed by counsel. First, the question of Tavis, when the question was asked. I'm sorry, the question of? Tavis. I raised that. The court raised that question, and I'd suggest that if there's a question of following Tavis, Tavis actually supports the appellant's position. The reason for that is, in that case, there certainly was this language about final binding and non-appealable, and the court did reference the fact that it must adhere to the decision under federal and Pennsylvania law. There wasn't really any appeal of the arbitration decision. Right, exactly. Exactly. And the only thing that I can glean from it is that the circuit court did, in fact, address the issue of whether the 10A factors were met. So even though there was that language, the court did look at it. We don't suggest that that is clearly on point that the court must follow. Simply suggesting that one could interpret that as supportive of the appellant's position. Second, counsel pointed out the fact that if one doesn't make a motion to vacate within a certain period of time, that it loses that right, and that somehow there's an understanding that that right is not as significant as we might otherwise say it is. That goes back, though, to those Wright and Miller cases cited in MACTEC. That's a knowing decision after the dispute arises, and I suggest that's a distinction here, that one should not be able to prospectively waive that important appellate right directly linked to 10A. After the fact, just like those other cases that say you can waive fraud or you can waive statutes of limitation after the fact, I think it's consistent with the policy, but certainly not prospectively based on the importance of that right as set forth by the Second Circuit, I think, clearly. But then why not say that in your arbitration clause? Why not put that language in there? I know that's a different issue from the one you're arguing to us, and you're arguing the scope and application of the statute. But why not? Maybe the answer is why do that if the statute only already anticipates that and prohibits it, then why go ahead and waive something that you don't have to waive because the statute doesn't give the right anyhow? I guess that's your answer. Right. Yeah, and I'm suggesting, actually, that you can't waive it, but if you can, that it has to be clear and unequivocal, and this language, as the cases have interpreted, it is not clear and unequivocal because it simply relates to waiver of the review of the merits, not the 10A requirements. And I'd go a step further and say what the parties should be doing if this court were to say you could waive it, what the court should require based on clear and unequivocal waiver language is a specific reference to waiver of 10A and the state corollaries. Well, Mr. McConnell is arguing the statute already gives you that. Why would, this is kind of the reverse of what I asked you. He's saying it's already in the statute. So if we interpret it that way, we're reading into the arbitration agreement meaningless duplicative language. We can't do it. No, I'm suggesting it's not in the statute. It's not in the statute. There's nothing in the statute that says that one may waive this right. I thought what counsel was referring to was the fact that if one doesn't, yeah, exactly. The other, last issue that counsel was referring to is this question of interpretation. As I understand his argument, he's saying, well, this is really just a foot in the courtroom door in the first instance. To say that would swallow the rule of whether arbitrators act beyond the scope of their authority because you could say in almost every scope of authority case that it's a question of interpretation. The arbitrator is by nature interpreting the scope of their authority. And then the overseer determines whether they were right or wrong, characterized as scope of authority, which is specifically set forth in the statute. We suggest in this case there's a clear overstepping of scope of authority because the contract specifically, explicitly says no punitive damages. And they awarded, excuse me, no lost profit damages and they awarded lost profit damages. To do that, they had to find a conflict and then discuss the fact that they were interpreting the conflict. We suggest that there is no conflict because the provision that they're award anything under applicable law refers to the paragraph preceding it that says specifically, however, it must adhere to the terms of this agreement. And the limitation of liability clause is absolutely clear that says it may, they may not award lost profit damages. The thing that really illustrates, I think, the fallacy of what the court did is this big letter, small letter analysis. The limitation of liability clause uses the term, this agreement, which is a defined term. You may not award lost profits in connection with this agreement. This agreement is defined as the agreement as a whole. And for the panel then to say, well, it should have been a big capital A and then little capital letters afterwards. And since it didn't, we're going to find that it's actually a different agreement illustrates, I think, how they were reaching to find this conflict. I see a lot of time. I just thank you once again, really. Maybe we're on a roll here, but again, just a wonderful argument on behalf of both sides. Mr. McConaughey, Mr. McConaughey, I won't embarrass you by asking your age, but whatever it is, I hope that I have the same kind of intellectual acuity at my age when I get to where you are.